UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: GERSHON NAVON | BANKRUPTCY NO. 01-51149 (AHS) |
| GERSHON NAVON,<br>    Appellant : | |
| v. : | CIVIL ACTION NO.: 3-02-cv-1812 (CFD) |
| FRANK SIMON,<br>    Appellee : | |

**RULING ON BANKRUPTCY APPEAL**

I.    Introduction

On September 21, 2001, petitioning creditor, Frank Simon, commenced this involuntary action against Gershon Navon, the alleged debtor, under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut ("the bankruptcy court"). Appellant Navon appeals the bankruptcy court's September 12, 2002 decision granting the relief requested and directing the entry of an order for relief under Title 11, Chapter 7 of the United States Code.

II.   Background

Simon is the holder of a 1994 final judgment entered against Navon in the United States District Court for the District of Maine in the amount of $1,661,622.71 plus interest. Simon v. Navon, 71 F.3d 9 (1st Cir. 1995) (affirming in part jury verdict against Navon); Memorandum of Decision at 2. Until 1992, Navon was the president of Mariculture Products Corporation ("MPC"), a fish farming venture which was incorporated in Maine in 1987. Id. MPC was the parent company and owner of Mariculture Products Limited ("MPL"). Id. at 2-3. Navon also served as the president of MPL. Id. at 3.

III.     Bankruptcy Court's Decision

On September 21, 2001, Simon filed an Involuntary Petition alleging, among other things, that Navon qualified as a person against whom an order for relief may be entered under 11 U.S.C. § 303. On October 26, 2001, Navon filed an Amended Answer denying that he had any interest in property in the United States as of September 2001, as required by 11 U.S.C. § 109(a), and thus that he was not a person against whom relief may be entered.

On July 24, 2002, a hearing was held before the bankruptcy court, and on September 19, 2002, the bankruptcy court issued a Memorandum of Decision. After reviewing the evidence, the bankruptcy court concluded that "Navon had the requisite interest in property to satisfy § 303." (Memorandum of Decision at 4.)

The issues on appeal are (1) whether the bankruptcy court erred in determining that Navon had a property interest in MPC in 1992; (2) whether the bankruptcy court erred in finding that Navon continued to hold a property interest in MPC in 2001; (3) whether the bankruptcy court erred in shifting the burden of proof to Navon to demonstrate that Navon did not have a property interest in MPC in 2001; and (4) whether the bankruptcy court erred in drawing an adverse inference from Navon's failure to appear at trial or to present documents or other evidence to refute jurisdiction.

III.     Standard of Review

A district court has jurisdiction to decide appeals of final orders of the bankruptcy courts under 28 U.S.C. § 158(a). The factual findings of the bankruptcy court are reviewed by the district court for clear error, and the conclusions of law are reviewed de novo. See Fed. R. Bankr. P. 8013 Fed. R. Bankr.P. 8013 ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); National Union Fire Ins. Co. v. Bonnanzio, (In re

Bonnanzio), 91 F.3d 296, 300 (2d Cir .1996).  A district court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

IV.    Discussion

Navon argues that the bankruptcy court's finding that he owned shares of MPC in 1992 was clearly erroneous.  The bankruptcy court's finding is supported by testimony from Dean Read, a former commercial loan officer at Key Bank in Maine.  According to Read, he facilitated a loan to MPC predicated on financial information provided by Navon.  This information included personal financial statements, in which Navon represented that he owned MPC stock in the approximate value of three million dollars.  Mr. Read also testified that Navon represented to Read that he was the owner of MPC, and that Navon did not differentiate between MPC, MPL, and himself.  Simon also testified that Navon represented to him that Navon was the sole owner of MPC and that MPC owned MPL.  Navon presented no documents, testimony, or other evidence refuting or discrediting any of this evidence.  See also, Simon v. Navon, 71 F.3d at 12 (noting that Navon was the sole shareholder of MPL as of 1992).  Accordingly, the bankruptcy court's finding that Navon owned MPC as of 1992 was not clearly erroneous.

Based on its finding that Navon owned MPC in 1992, the bankruptcy court inferred that Navon continued to own MPC on the date of the petition in 2001.  Navon again failed to offer any documents, testimony, or other evidence to challenge this inference.  Navon argues that the bankruptcy court erred as a matter of law in inferring that Simon still owned MPC in 2001.  However, the evidence on which the bankruptcy court relied was not insufficient as a matter of law.  "[T]he fact that a man at one time had a given item of property is a circumstance to be

weighed in determining whether he may properly be found to have it at a later date." Maggio v. Zeitz, 333 U.S. 56, 66, 68 S.Ct. 401, 406 (U.S. 1948) (noting that the length of time, the nature of the property and other circumstances should be considered in forming inference of continued possession, and rejecting rigid presumption of continued possession without regard to its reasonableness in a particular case). Regardless of whether this Court would have drawn the same inference and reached the same conclusion were a de novo standard to apply, the bankruptcy court did not commit clear error in finding that Navon held an interest in property in the United States in 2001.

Navon next argues that the bankruptcy court made a legal error in requiring him to offer rebuttal evidence after Simon established a prima facie case that Navon owned property in the United States on the date of the petition. Navon seems to argue that the concept of a "prima facie case" requiring rebuttal evidence only applies in the context of a creditor's burden of proving that a claim is not subject to a bona fide dispute. However, this is a general principle of evidence. See, e.g., 9 Wigmore, Evidence § 2487 (3d ed.). Furthermore, like the requirement that the debtor own property in the United States on the date of the petition, the requirement that a petitioning creditor's claim not be subject to a bona fide dispute is jurisdictional.[1] In re BDC, 330

---

[1] The bankruptcy court correctly summarized the burden shifting described in In re Gutfran, 210 B.R. 672 (Bankr.D.Conn. 1997). As the bankruptcy court noted and United States Court of Appeals for the Second Circuit ultimately held, a petitioning creditor has the burden of establishing a prima facie case that no bona fide dispute exists. Memorandum of Decision at 3; In re BDC 56 LLC, 330 F.3d 111 (2d Cir. 2003). "Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." In re BDC 56 LLC, 330 F.3d 111 (2d Cir. 2003). However, this issue might have been more clear if the bankruptcy court had referred to the burden shifting described in In re Gutfran as shifting the "burden of production." The term "burden of proof" can be used to refer to two separate burdens: "One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true." 2

F3d 111, 118-19 (2d Cir. 2003). Thus, the bankruptcy court did not err in requiring Navon to present evidence to rebut Simon's prima facie case.

Navon also argues that the bankruptcy court improperly drew an adverse inference from Navon's failure to testify or offer evidence in support of his position. "It is well-settled that a party's failure to call a witness may permissibly support an inference that that witness's testimony would have been adverse." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 81 (2d Cir. 2000). See also United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (noting that the Second Circuit affords trial courts "considerable discretion" in deciding whether to give a "missing witness" jury instruction and upholding trial court's refusal to give "missing witness" instruction requested by criminal defendant); Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 432 n. 10 (2d Cir. 1999) (adverse inference permitted when witness's testimony would be material).[2] The bankruptcy court found that Navon was available to testify.

---

McCormick On Evid. § 336 (6th ed.). As Navon acknowledged, the ultimate burden of persuasion is not shifted by In re Gutfran. Thus it appears that the bankruptcy court only shifted the burden of production. However, even if the bankruptcy court improperly shifted the burden of persuasion, the distinction between the two concepts is immaterial where, as here, the party on to whom the burden was shifted presented no evidence whatsoever.

[2] The bankruptcy court did refer to Secondino v. New Haven Gas Co., 147 Conn. 672, 675, 165 A.2d 598 (1960) without noting that Federal law applies in this case and that Secondino was overruled in part by State v. Malave, 250 Conn. 722, 728-29, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S.Ct. 1195, 145 L.Ed.2d 1099 (2000). See also Malave v. Gomez, 383 F. Supp.2d 327, 333 (D. Conn. 2005) (finding that use of missing witness jury instruction in criminal case was not contrary to United States Supreme Court precedent); Conn. Gen. Stat. § 52-216c (prohibiting use of missing witness jury instruction in civil cases, but permitting counsel to argue that jury should draw adverse inference). However, even in Connecticut "the substance of the 'missing witness' rule remains intact because, even without an instruction from the court, the jury may nevertheless draw an adverse inference in the same instances." In re Samantha, 268 Conn. 614, 847 A.2d 883 (2004) (holding that trial court appropriately drew adverse inference from parents' failure to testify in case regarding termination of parental rights). Thus, the bankruptcy court's reference to Secondino in this context was not error.

Navon had testified in Connecticut within the past year. His attorney put Navon's name on the list of witnesses he intended to call at the bankruptcy hearing and never sought to remove it from the list. Accordingly, the bankruptcy court's finding was not clearly erroneous. In addition, as the putative owner of the property in question, Navon had the best evidence about his ownership. Thus, the bankruptcy court appropriately relied on Navon's failure to testify to buttress its conclusion that Navon had the requisite property interest as of 2001.

V.   Conclusion

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED and the Clerk is directed to close this case.

**SO ORDERED** this   6th   day of March, 2007, at Hartford, Connecticut.


　　　　　　　　　　　　　　　　　　 /s/ CHRISTOPHER F. DRONEY
　　　　　　　　　　　　　　　　　**CHRISTOPHER F. DRONEY**
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**